UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA    )
                            )
        v.                  )   NO. 03-40037-FDS
                            )
FABIAN CALVILLO-SANCHEZ     )
                            )

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by its attorneys, Michael J. Sullivan, United States Attorney, and Paul G. Casey, Assistant United States Attorney, respectfully submits this Sentencing Memorandum regarding Defendant Fabian Calvillo-Sanchez, who is scheduled to be sentenced on January 25, 2005. For the reasons provided below, the government recommends a sentence within the Guidelines Sentencing Range ("GSR") of 41-51 months.

1.   BACKGROUND

On September 17, 2004, the defendant pleaded guilty to a one count indictment charging the defendant with unlawful re-entry of a deported alien, in violation of 8 U.S.C. § 1326(a). During his plea colloquy, the defendant admitted that he is a native and citizen of Mexico, born in Villa Victoria, Mexico on August 25, 1978. On September 18, 1997, agents from Immigration and Customs Enforcement (formerly INS) were advised that the defendant was at the Cornell Corrections Facility, Big Springs, Texas, serving a sentence for a criminal conviction for

conspiracy to possess with intent to distribute approximately 686.5 kilograms of marijuana.

Deportation proceedings were initiated and on October 21, 1997, there was a final Administrative Removal Order issued by the Deputy director of INS located in Dallas Texas.

On July 12, 1999, Calvillo-Sanchez was ordered deported from the United States and was deported from the United States o August 24, 1999 at El Paso, Texas.

On October 30, 2003 Fitchburg police arrested Calvillo-Sanchez on an unrelated charge and notified ICE agents that they had Calvillo-Sanchez in custody.

After being advised of his Constitutional rights, Calvillo-Sanchez admitted that he had re-entered th United States without inspection by an Immigration Officer on an unknown date, at an unknown location along the Mexican border.

FBI obtained the fingerprints taken from the defendant during his arrest and confirmed that the defendant was the same Fabian Calvillo-Sanchez who had previously been deported. A further review of the defendant's ICE and INS records confirmed that the defendant unlawfully reentered with the having received the express consent to apply for readmission to the United States from either the US Attorney General prior to March 1, 2003, or the consent of the Secretary of the Department of Homeland Security since March 1, 2003.

2.  SENTENCING CALCULATION

   a.  Statutory Maximum Sentence

Count One carries a maximum penalty of twenty years of imprisonment.

   b.  The Court Should Give Great Weight to the Sentencing Guidelines Calculations and Impose a Sentence Within the Guideline Range as Determined by the Court.

In United States v. Booker, 2005 WL 50108 (U.S. Jan. 12, 2005), the Supreme Court held that the United States Sentencing Guidelines, as written, violate the Sixth Amendment principles articulated in Blakely v. Washington, 124 S. Ct. 2531 (2004). The Court determined that a mandatory system in which a sentence is increased based on factual findings by a judge violates the right to trial by jury. As a remedy, the Court severed and excised the statutory provision making the Guidelines mandatory, 18 U.S.C. § 3553(b)(1), thus declaring the Guidelines "effectively advisory." Booker, 2005 WL 50108, at *16. This ruling results in a system in which the sentencing court, while informed by the Guidelines, may impose any sentence within the statutory maximum penalty for the offense of conviction. The sentence will be subject to review by the Court of Appeals for "reasonableness." Id. at *24.

In the wake of Booker, this Court first must make a correct calculation under the existing Sentencing Guidelines, and then consider the final guideline calculation when determining the

sentence to be imposed.  Justice Breyer's majority opinion directed that "[t]he district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing."  Id. at *27.

The sentence in this case should fall within the advisory guideline range as determined by the Court.  This view is shared by Congress and the Supreme Court.  As every Supreme Court justice in the various opinions in Booker recognized, the Guidelines carry out the express national policy, as articulated by Congress, that sentences be uniform across the country to the extent possible and be based on the offender's actual conduct and history.  See, e.g., id. at *21 (majority opinion of Breyer, J.) ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity."); id. at *19 (same) ("Congress' basic statutory goal -- a system that diminishes sentencing disparity -- depends for its success upon judicial efforts to determine, and to base punishment upon, the *real conduct* that underlies the crime of conviction."); id. at *42 (dissenting opinion of Stevens, J.) ("The elimination of sentencing disparity, which Congress determined was chiefly the result of a discretionary sentencing regime, was unquestionably Congress' principal aim."); id. at *47 (dissenting opinion of Scalia, J.) ("the primary objective of the Act was to reduce sentencing disparity.").

The Guidelines, aiming to achieve the uniform and appropriate treatment of like crimes, represent the distillation of 15 years of careful study of sentencing practices across the country, and correlate as well to the varying severity of crimes as defined by Congress. The Guidelines, consisting of offense characteristics and various grounds for departure, address all of the considerations relevant to sentencing, as articulated in 18 U.S.C. § 3553(a), such as "the nature and circumstances of the offense and the history and characteristics of the defendant;" "the need for the sentence imposed -- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;" and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct . . . ."

Thus, fidelity to the Guidelines best accomplishes the purpose of fair and consistent sentencing, and should occur absent unusual circumstances. The government commends to the Court's attention the scholarly opinion in <u>United States v. Wilson</u>, 2005 WL 78552 (D. Utah Jan. 13, 2005), which shared this

conclusion. In his assessment in Wilson, on the day after Booker was decided, Judge Cassell explained at length the reasons supporting this view. As he stated, the Guidelines represent the product of an expert commission, which has studied the sentencing process at great length, under the specific mandate of Congress to fashion recommended sentences which carry out the purposes defined by Congress. The resulting Guidelines, Wilson held, plainly reflect the public's will, as expressed by their democratically elected representatives, in that Congress has repeatedly approved of the Guidelines or acted to adjust them to Congressional preference. Wilson further observed that guided sentencing appears to have had a positive impact in deterring criminal conduct throughout the country, and thus serves the purpose of deterrence as well as punishment and fairness. For all of these reasons, Judge Cassell determined that "the court will give heavy weight to the Guidelines in determining an appropriate sentence. In the exercise of its discretion, the court will only depart from those Guidelines in unusual cases for clearly identified and persuasive reasons." Id. at *1.

Accordingly, a sentence within the guideline range is presumptively reasonable, and accommodates the Congressional purpose, affirmed by the Supreme Court, of obtaining fair sentences which are uniform to the extent possible. The government anticipates that only sentences outside the guideline

range will be subject to appellate scrutiny for reasonableness in light of the Congressional mandate.

In this case, no unusual circumstances exist which warrant an exception to the preference for guideline sentencing. Therefore, the government respectfully recommends that the Court sentence the defendant within the Guidelines range calculated in the PSR.

### c. Sentencing Guidelines Calculation

The government agrees with the Guidelines calculations as contained in the final pre-sentence report ("PSR"), which result in a Guidelines Sentencing Range of 41-51 months of imprisonment.

#### i. Base Offense Level

Pursuant to USSG § 2L1.2(a), the defendant has a base offense level of 8.

#### ii. Specific Offense Level

Since defendant was previously deported after sustaining a conviction that is a drug trafficking offense for which the sentence exceeded thirteen months, the offense level should be increased 16 levels pursuant to USSG § 2L1.2(b)(1)(A)(i). Defendant has objected to this enhancement arguing that the Guidelines are unconstitutional pursuant to Blakely v. Washington, _ U.S. _, 124 S.Ct. 2531 (June 24, 2004). Defendant argues that since the prior conviction has not been pled and proven, it should not be counted. The government recently

conferred with defense counsel since <u>Booker</u>. The government understands that the defendant will admit that he has this prior conviction, thereby avoiding the risk of an obstruction enhancement, but argue that since the Guidelines are now advisory, the Court should impose a sentence less than the Guidelines range. Although the government has not yet seen the defense memorandum, the Government believes that the sentencing range as calculated in the PSR, is accurate and no longer in dispute.

### iii. <u>Acceptance of Responsibility</u>

The government agrees that the defendant notified the government in a timely fashion of its intention to accept responsibility and therefore is entitled to a three-level reduction pursuant to §§3E1.1(a) and (b).

3.   <u>GOVERNMENT'S RECOMMENDATION</u>

As set forth in the PSR, with an adjusted offense level of 21 and a criminal history category of III, the defendant falls within the sentencing range of 41-51 months. The government respectfully recommends that the Court impose a period of incarceration within this Guidelines range. Such a sentence would recognize the seriousness of defendant's offense conduct, the defendant's criminal recidivism.

The defendant has previously served a federal sentence of 37 months and was previously deported. The defendant admits that

approximately three years after his release, the defendant returned to the United States, where he was arrested on an unrelated charge. PSR, ¶59.  It is well settled in this Circuit that the mere fact that a person who commits a crime is subject to deportation is not a sufficient basis for a downward departure.  United States v. Maldonado, 242 F.3d 1, 5 (1st Cir. 2001)("In short, a deportable alien who commits a crime is still within the 'heartland' of the guidelines, absent something more").  Similarly, the mere fact that a person who commits a crime has stipulated to deportation is also not a mitigating circumstance present to a degree not contemplated by the Sentencing Commission (and thus sufficient for a downward departure).  United States v. Clase-Espinal, 115 F.3d 1054, 1060 (1st Cir. 1997).  Although it appears that downward departures motions are no longer required post Booker, the rationale for denying the downward departure is that the Guidelines take into account the fact that the defendant has previously been deported and returned nonetheless.  As noted above, the Guidelines are the product of 15 years of careful study of sentencing practices across the country, and correlate as well to the varying severity of crimes as defined by Congress. There simply are no unusual that would justify a sentence below the GSR of 41-51 months.

For all of the above reasons, the government respectfully recommends that the Court impose a period of incarceration within the Guidelines range established by the PSR.

                        Respectfully submitted,

                        MICHAEL J. SULLIVAN
                        United States Attorney

                        \s\ Paul G. Casey
                        PAUL G. CASEY
                        Assistant United States Attorney

Date:   January 20, 2005.

SS., WORCESTER

**CERTIFICATE OF SERVICE**

    I, Paul G. Casey, Assistant U.S. Attorney, hereby certify that a copy of the foregoing was served by facsimile on counsel of record on this, the 21st day of January, 2005.

                                  \s\ Paul G. Casey
                                  PAUL G. CASEY
                                  Assistant U.S. Attorney